**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BETH PEPPER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23 C 1546** |
| | ) | |
| **KUNAL TAILOR and LYFT, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Beth Pepper has sued Kunal Tailor and Lyft, Inc. to recover for injuries she
suffered while riding as a passenger in a vehicle driven by Tailor on a ride that Pepper
ordered via Lyft's online platform. Pepper has sued Tailor for negligence and Lyft based
on the doctrine of *respondeat superior.* Lyft has moved to compel arbitration of
Pepper's claims against it. For the reasons stated below, the Court grants Lyft's motion.

**Background**

In July 2021, Pepper created an account with Lyft, which operates a rideshare
platform. To use Lyft's platform, all users must accept its terms of service. The full text
of the terms of service were displayed on the screen of the device Pepper used to
create the account, though it's relatively clear that Pepper would have had to scroll
through multiple screens to read all the terms.

Lyft's terms of service included a provision that stated as follows:

YOU AND LYFT MUTUALLY AGREE TO WAIVE OUR RESPECTIVE
RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A

> JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY
> ARBITRATION, as set forth below.  . . .
>
> Except as expressly provided below, ALL DISPUTES AND CLAIMS
> BETWEEN US . . . SHALL BE EXCLUSIVELY RESOLVED BY BINDING
> ARBITRATION SOLELY BETWEEN YOU AND LYFT.  These Claims
> include, but are not limited to, any dispute, claim or controversy, whether
> based on past, present, or future events, arising out of or relating to:  . . .
> the Rideshare Services, [and] . . . any or other goods or services made
> available through the Lyft Platform.

Def.'s Mot. to Compel Arb., Ex. 2 ¶ 17.   The term "Rideshare Services" is defined in the

terms of service as "the driving services provided by Drivers to Riders"; "Drivers" are

rideshare drivers who provide transportation through Lyft; and "Riders" are persons who

order such services.  *Id.* ¶ 1.  At the very beginning of terms of service, there was an all-

capital-letters warning advising the reader that claims would have to be submitted to

arbitration and also stating that "[b]y entering into this Agreement, and/or by using or

accessing the Lyft Platform, you expressly acknowledge that you understand this

Agreement (including the dispute resolution and arbitration provisions in Section 17)

and accept all of its terms."  *Id.*, p. 1.  To create her account, Pepper clicked on a box

that said "I accept" the terms of service.

On August 17, 2022, Pepper requested a ride using the Lyft platform.  Tailor was

the driver summoned in response to Pepper's request.  A collision took place while

Pepper was riding as a passenger in Tailor's vehicle.  Pepper alleges that the collision

was caused by Tailor's negligence.  As indicated earlier, Pepper has sued Tailor for

negligence and Lyft based on *respondeat superior.*  Pepper filed her suit in state court.

Lyft removed the case to federal court and then filed the present motion.  Lyft asks the

Court to compel arbitration and stay proceedings against Lyft under the Federal

Arbitration Act (FAA), 9 U.S.C. § 3.

**Discussion**

"The [Federal Arbitration Act] provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "As the Supreme Court repeatedly has emphasized, arbitration is a creature of contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016). "[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Whether an agreement to arbitrate has been formed is a question governed by state law—in this case, Illinois law. *Sgouros*, 817 F.3d at 1034.

Pepper contends that there is no valid agreement to arbitration. She "does not dispute that she clicked the 'I agree' button on Lyft's 'Terms of Service' page," Pl.'s Resp. to Mot. to Compel Arb. at 1, but she contends that this did not bind her to a contract, and in particular did not bind her to a requirement to arbitrate any disputes. Specifically, Pepper says that she "did not read the terms on the application when creating an account, was unaware that she was waiving her right to a jury trial, and further was unaware that she was agreeing to arbitrate all disputes . . . ." *Id.* As a result, Pepper argues, there was no meeting of the minds and no mutual assent.

Pepper focuses in particular on the length of the Lyft terms of service and the fact that the entirety of those terms did not appear on her device screen all at once when she signed up for the Lyft application. It is unreasonable to believe, she contends, that

3

an average user like her would understand the totality of the agreement "or scroll through pages upon pages of incredibly small font 'Terms of Service' when creating an account with Lyft . . . ." *Id.* at 7.  The Court should not assume, Pepper argues, that "a person who clicks on a box that appears on a screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.)." *Id.*  She also points out that the application did not require her to scroll through the terms of service before clicking "I agree." *Id.* at 8.  In short, a user is "able to merely click on the 'I agree' without having to review any of the 'Terms of Service.'" *Id.*

A person's failure to read an agreement, however, is not a viable basis to argue that it is not binding.  *See e.g., Hill v. Gateway, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997); *Novitsky v. Am. Consulting Eng'rs, LLC*, 196 F.3d 699, 702 (7th Cir. 1999) ("people may sign legal documents without reading them first, but the documents will be binding whether they read them or not").  That said, this principle doesn't apply to online click agreements in exactly the same way that it applies to physically signed contracts, including when the online click agreement is one that submits disputes to arbitration.  This is illustrated by the Seventh Circuit's decision in *Sgouros*.  In that case, the court upheld a district judge's decision that a click agreement arbitration provision was not enforceable against the plaintiff.  The court applied a "two-part reasonable communicativeness test" derived from an Illinois case regarding cruise ship tickets, under which the court asked "whether the web pages presented to the consumer adequately communicate all of the terms and conditions at issue of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms."  *Sgouros*, 817 F.3d at 1034 (citing *Walker v. Carnival*

4

*Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 134, 889 N.E.2d 687, 694 (2008)). The court stated that "[t]his is a fact-intensive inquiry: we cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contends not only of that page but of other content that requires further action (scrolling, following a link, etc.)." *Sgouros*, 817 F.3d at 1034-35.

The ultimate question is whether a reasonable person in Pepper's position would have realized that she was assenting to the terms and conditions, including the arbitration provision, when she clicked "I agree." *See id.* at 1035. The Court concludes that Lyft has made the necessary showing.

Based on an affidavit from a Lyft representative, at the relevant time the following took place in connection with an individual's creation of a Lyft account:

> Plaintiff (like all users) was presented directly on the screen of her Lyft App with the full text of those Terms of Service, including the arbitration provision. The Lyft App directed Plaintiff to scroll through and read the entire Lyft Terms of Service at that time. At the top of the screen within the Lyft App, immediately above the text of the Terms of Service, was a conspicuous notice stating: "Before you can proceed you must read and agree to Lyft's Terms of Service." At the bottom of the screen, immediately under the text of the Terms of Service, the Lyft App presented Plaintiff with an "I Agree" button that she was required to click to demonstrate her consent and agreement to be bound by the Terms of service and to proceed with use of the Lyft App.

Simmons Suppl. Decl. ¶ 2. According to the same Lyft representative, the following is what Pepper would have seen on her screen within the Lyft application at the time she consented to the terms of service:



In short, on the selfsame screen on which Pepper clicked "I agree," she was specifically advised of the requirement to arbitrate any claims against Lyft.

Illinois contract law assesses intent to enter into a contract objectively. "Under the objective theory, intent to manifest assent in Illinois is revealed by 'outward expressions such as words and acts.'" *Sgouros*, 817 F.3d at 1034 (quoting *Bank*

*Computer Network Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago*, 110 Ill. App. 3d 492, 498, 442 N.E.2d 586, 591 (1982)). Pepper's "outward expressions" objectively manifested her agreement to the arbitration requirement.

Pepper makes no other viable argument in opposition to Lyft's motion. As the Court has held, she affirmatively manifested her acceptance of an agreement to arbitrate. And there is no question that the arbitration provision covers the present dispute; it is broadly worded to include "any dispute, claim or controversy, whether based on past, present, or future events, arising out of or relating to" rideshare services. That is what the present lawsuit involves.

## Conclusion

For the reasons stated above, the Court grants Lyft's motion to compel arbitration and stay proceedings [dkt. no. 15]. Proceedings on plaintiff's claim against Lyft are stayed. Her claim against Tailor will proceed before this Court. The telephonic status hearing set for October 27, 2023 is vacated and advanced to October 6, 2023 at 8:55 a.m. The parties are directed to file on September 29, 2023 a joint status report that includes a proposed discovery and pretrial schedule regarding the claim against Tailor; a report on the progress of initiating arbitration on the claim against Lyft; and an update on any settlement discussions.

Date: September 25, 2023

_____
MATTHEW F. KENNELLY
United States District Judge