IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BETH PEPPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO: 1:23-cv-01546 |
| | ) | |
| KUNAL TAILOR and LYFT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TAILOR RESPONSE TO PLAINTIFF'S
MOTION PURSUANT TO RULE 702 TO BAR DEFENDANT'S RULE 26(2)(a)
WITNESS, MICHAEL A. DILICH**

NOW COMES the Defendant, KUNAL TAILOR, by his attorneys, SCHWARTZ, GILLIGAN, and in Response to Plaintiff's Motion to Bar the expert testimony of Michael Dilich, states as follows:

## I. INTRODUCTION

Plaintiff brought a Motion to Bar Defendant's expert, Michael Dilich, from providing testimony in this case. Mr. Dilich is an accident reconstructionist. In her Motion, Plaintiff inaccurately summarized the issues of this case, created an artificial rubric for Mr. Dilich's opinions, and then attempts to disqualify him because those factors have not been met.

As detailed below, there is a serious question as to whether the accident in question was a one-vehicle or two-vehicle accident and what caused Defendant to lose control of his vehicle. Defendant's position is that the proximate cause of the accident was a truck which made contact with Defendant's vehicle, forcing it off the road. Plaintiff, in contrast, claims Defendant simply lost control of his vehicle.

Evidence produced in this case included swirl marks on and damage to Defendant's vehicle. Dilich provided the opinion that the damage to Defendant's vehicle was caused by contact with a truck wheel.

The question presented by the Motion is whether the testimony of Defendant's expert would aid the trier of fact in determining how the accident occurred. Whether Defendant's vehicle made contact with a truck is a contested issue in this matter and Dilich's testimony that there was damage from a truck would help the trier of fact understand how the accident occurred. It also impacts assessment of the credibility of the parties and witnesses.

## II. FACTS OF CASE AND EXPERT OPINION

The accident occurred on I-90 in Chicago with Defendant's vehicle heading towards O'Hare. Plaintiff was a back seat passenger in that vehicle. Plaintiff alleged that Defendant was in the center lane prior to the impact. *Plaintiff Deposition*, P. 34, L 19-24. She claimed Defendant's car drifted over into another lane, Defendant over-corrected in attempting to return the vehicle to the lane and in so doing, caused Defendant's vehicle to spin out of control. *Id*. at P 37, L. 13-23. Significantly, Plaintiff now says she does not recall if Defendant's vehicle made contact with a truck. *Id*. at P. 46, L6-8.

In contrast, Defendant testified that the accident was caused by a truck entering his lane and striking his vehicle. He was driving towards O'Hare. The road had four lanes. *Tailor Deposition*, P.67, L 1-8. He was in the extreme right lane. *Id*. at P. 68, L 1-3. He did not attempt to switch lanes just before the accident. *Id*. at P.

68, L 20-22. As he was driving, he felt an impact on the driver's side back. *Id.* at P. 72, L 2-10. He testified that a box truck came into his lane and hit his vehicle. *Id*. at P. 75, L 5-7.

From the very beginning, Defendant maintained this accident was caused by an unknown truck that crossed into his lane and struck his vehicle causing him to lose control of it. His account of the accident never wavered. He told the first witness on scene after the accident, Dean Parker, that a truck was involved in the accident. (*Parker Deposition P.40, L. 3-9*). He also informed Illinois State Trooper Abram Nino of this fact at the scene. *(Nino Deposition at P.22, L24; P.23, L1-20)*. Moreover, either plaintiff or defendant told paramedic, Scott Gomez, at the scene that their vehicle was struck on the left side causing it to lose control. (*Gomez Deposition at P.23, L2-15)*. Mr. Parker gave a recorded statement within hours of the accident stating Defendant's vehicle was hit by a truck. (*Parker Deposition at P.43, L13-22; P.52, L14 - P.54, L12*). Plaintiff then told Nurse Practitioner Cheryl Giese within hours of the accident that another vehicle veered into their lane, swiping it which caused it to spin and crash*. (Giese Deposition, P.25, L7-13).*

Mysteriously, however, now that suit is filed, Plaintiff claims she does not remember whether there was contact with a truck. Moreover, witness Parker now denies a truck was even involved in the accident*. (Parker Deposition at P.41, L2-14).* Obviously, there is a significant conflict between the testimony of the two parties on liability. A very important part of that difference is whether Defendant's vehicle was struck by another vehicle or whether the Defendant simply lost control.

Michael Dilich is an expert in accident reconstruction and related matters. *Dilich Deposition*, P. 16, Line 14 -22. He offered testimony that supports Defendant's testimony that Defendant's vehicle made contact with a truck. Again, that is a contested fact that goes to a key issue of the cause of the accident. Plaintiff claims Defendant simply lost control and did not know if there was contact with a truck.

Dilich does not offer testimony as to who caused the accident, but instead provides testimony as to the cause of damage to Defendant's vehicle. As he explained in his deposition, he will not offer an opinion as to what caused the accident, but ***what caused the damage to Defendant's vehicle***." Dilich Deposition, P. 30, L22 – P.31, L4., *See* P.36, L18-23 [Emphasis added].

In order to determine if Defendant's car made contact with a truck, Dilich reconstructed the damage to Defendant's car, but did not reconstruct the accident itself. The damage to the car, according to Dilich, was one of the factors that lead to the accident. He testified: "I did reconstruct the cause of the damage to the car, and that's one of the factors that led to this accident." *Id* at P. 38, L10-12.

With regard to his methodology, he explained at *Id.* at P. 46, L8 -14:

What I did was part of accident reconstruction, and that methodology is what I explained that is part of accident reconstruction is to determine what types of -- where the damage is located and what caused the different damages that we look at when we see a vehicle damaged in an accident.
Accident reconstruction, Dilich testified, is a science and is based on science.

*Id.* at P.46, L16-20. Part of that science "is examining and determining the cause of damage to a vehicle and the extent of it and how it occurred."

Dilich's opinion is that various damage to Defendant's vehicle shows that

Defendant's vehicle made contact with a truck. Dilich was asked about photos showing marks to the side of Defendant's vehicle. In response, Dilich provided the following information and conclusions.

Dilich stated at P. 79, L1-5:

A. So the -- the lugs went by the tire and the rim, and you can see a lot of damage to the rim, along the flange of the rim, and you see what I see, a lot of scuffing and what not on the tire itself.

He testified at P. 86, L4-7:

Q. Okay. What caused the dents on the rear driver's side door?
A. The swirling of the lugs on the tire, truck tire.

He further testified at P.122, L15- P.124, L3:

Q. Okay.  So we'll – this is part of one of your other exhibits, but I am just using this one.  So this will be Exhibit No. 25.

(Dilich Deposition Exhibit No. 25 was introduced at Mr. Dilich's deposition.  A copy is attached as an Exhibit "1" to this Reply for this Court's convenience.)

BY MR. GILLIGAN:
Q.  Do you recognize this photograph?
A.  Yes.
Q.  Okay.  And that white circle that we see in this photograph, is that a circle that you made?
A.  Yes.
Q. What is it that you're circling in that photograph?
A. The damage to the left rear door of the accident involving the Toyota.
Q. Okay.
A. Specifically, the damage that was caused by a spinning wheel bolt circle.
Q. Okay.  So I'm going to try to enlarge this a little bit. So explain to me why it is that you conclude that whatever made that mark was rotating.
A. Because the damage you can see is circular, very circular, in pattern, and the circles, if you look at the circles more closely, you can see that the circles overlap each other, and in my opinion, they are overlapping each other moving forward until they come to a stop, and they are getting closer and closer together, actually, until they come to the far left.

Q. and what does that mean?
A. That the vehicle – that the truck caused this damage is slowing down – the truck that caused this damage is getting closer to the speed, actual speed, of the Toyota.

One of the issues in this case, as shown above, is whether Defendant's vehicle made contact with a truck. Dilich's testimony explains why, using the science of accident reconstruction.

### III. DILICH'S TESTIMONY WILL AID THE TRIER OF FACT

Plaintiff's first argument is that Dilich will not provide opinions about "the cause of the accident." In making that argument, Plaintiff raised various points as opinions that Dilich does not hold. She pointed out that Dilich testified that he has no opinions, and is not opining, about the cause of the accident. He does not have an opinion as to whether "Defendant's vehicle moved into the truck's lane of traffic or vice versa." Instead, Plaintiff claimed:

> Simply put, his only opinions are regarding that the damage on the Defendant's vehicle was caused by the lug nuts on a truck wheel, but whether it was the fault of the truck or the Defendant, he has no opinion in that regard. *Plaintiff's Motion* at Page 2.

Rather than addressing the actual opinion provided and addressing the testimony of the parties, Plaintiff's Motion focused on the fact that Dilich did not have an opinion as to how the accident occurred.

Dilich made clear that he did not hold such opinions. He never disclosed or offered such opinion because as he stated there was not enough information to form such opinions. Instead, his opinion was limited to whether Defendant's vehicle made contact with a truck. Plaintiff's entire discussion of whether there was a full

accident reconstruction is irrelevant.

In his Deposition, Dilich made that obvious:

Q. You are not opining on the actual cause of this accident; true?
A. Well, my report tells you what I am opining in regards, and I am opining in regard to the cause of the damage on the car. *Dilich Deposition* at P. 30, L14-18.

In her Motion, Plaintiff claimed that it is not for the jury to decide if Defendant made contact with a truck but instead, she claimed, "The sole issue in this case is whether the Defendant was negligent in the operation of his motor vehicle resulting in Ms. Pepper's injuries." (Plaintiff's Motion, P. 2). That is simply an incorrect analysis of the issues in the case, the role of the jury and the function of an expert.

The actual question here should not be whether Dilich has any opinions as to what happened after contact with the truck or who caused contact with the truck, or in the end who is at fault, but instead the question in need of expert testimony is whether there was any contact with a truck at all. Whether or not a truck made contact with the vehicle, causing Defendant to lose control, is a central issue to this case.

Defendant claims that the accident was caused by a truck striking his vehicle and causing his vehicle to go off the road. Plaintiff claims Defendant's vehicle changed lanes prior to the accident, but now disputes whether there was contact with another vehicle.

---If it can be established that Defendant's vehicle made contact with a truck, then Defendant's account of the accident is more likely to be true. It is Dilich's opinion that there was such contact. There is no requirement, contrary to Plaintiff's

claim, that an expert must give an opinion as to whether a driver was negligent or who was at fault.

The admissibility of expert opinion is governed by Federal Rule 702, which provides in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

The expert is not required to resolve all facts or reach conclusions as to all issues. The rule references "a fact in issue." It does not require testimony as to "all" facts in issue. There is no requirement that an expert hold opinions as to the ultimate issue. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Instead, the proper analysis for whether an expert opinion is admissible is a question of relevance. In *Porter v. Whitehall Labs*, 9 F.3d 607, 613 (7th Cir. 1993), the Seventh Circuit referred to "assisting the trier of fact" as "essentially a relevance inquiry." In *Burbach Aquatics, Inc. v. City of Elgin*, 2011 U.S. Dist. LEXIS 4573, the Northern District Court spoke of the "low bar of relevancy" in making that determination.

Burbach Aquatics, referenced at great length by Plaintiff, had facts that form a remarkable analogy to this case. In Burbach, there was a dispute over construction delays. Id. The party attacking the expert argued that the expert's opinions "do not bear on a number of issues that are in dispute." Id. The District

expert does not have to testify as to all issues. *Id.* Instead, the expert would testify to various matters "all of which may by chain of inference assist the jury in drawing conclusions regarding timeliness or completeness of performance." *Id.* Similarly, in this case, the expert will testify as to whether there was contact with a truck, which a trier of fact can then use in determining whether Defendant's version of events in which his vehicle was struck – as opposed to merely losing control - played any role in this accident. This District Court decision, to the extent Plaintiff is asking this Court to take note of it, is more persuasive in favor of denying Plaintiff's Motion.

Plaintiff claimed that Dilich's testimony would be "non-helpful" and in making that argument relied upon *George v. Kraft Foods Global, Inc.*, 800 F. Supp. 2nd 928 (U.S. Dist. 2011). In that District Court case, the first expert gave an opinion that sought to define the terms of a statute. The second expert sought to impose a duty upon the Defendants that was contrary to law. Both were barred for those obvious reasons. An expert's opinion that is wrong does not help a trier of fact.

Similarly, Plaintiff relied upon another District Court decision, *Aponte v. City of Chicago*, 2011 U.S. Dist. LEXIS 52130 2011 WL 1838773, which is a great example of where testimony failed to meet those standards. *Aponte* involved Section 1983 violations regarding a search warrant. One opinion was barred because it did nothing but "regurgitate facts favorable only to the individual Defendants." The second was barred because it did little but summarize facts and "fact intensive findings are within lay competence."

The contrast between cases like *Burbach Aquatics*, *Porter* and *Smith* as opposed to other cases like *George* and *Aponte* nicely explains the type of testimony that is allowed and what testimony is not. It is admissible where the expert will provide information that will aid the trier fact. These lower district judges were in agreement.

As detailed above, Dilich will, based on his years of accident reconstruction, point to the damage to Defendant's car and explain how a truck caused that damage to Defendant's vehicle. A finder of fact is extremely unlikely to know if various marks to the side of a vehicle indicate contact with a truck. A finder of fact cannot simply look at swirl marks and determine their cause.

Such expert analysis would aid a trier of fact in evaluating whether Defendant "overcorrected," as alleged by Plaintiff, or whether there was contact with a truck. That inference may help the trier of fact determine liability.

## IV. METHODOLOGY

Plaintiff's attack on the expert's methodology is a classic attack on a strawman. Plaintiff argued that Dilich did not perform a full reconstruction. Absolutely true. He did not and he was not asked to. Plaintiff argued that he did not do an analysis as to the cause of the accident. Also true. That too as not part of the assignment. Instead, Dilich offered testimony as to whether there was contact with a truck. This was the extent of his retention and it is only these opinions that Defendant seeks to admit into evidence at trial. Dilich absolutely did not provide testimony as to the cause of the accident itself, only if there were one or two vehicles (notwithstanding

fault or cause).

Plaintiff provided a lengthy list of things that Dilich did not do and opinions that he does not hold. None of that matters.

Dilich testified that his opinions as to contact with the truck are based on the science of accident reconstruction.

Plaintiff attacked Dilich for not performing what she considered to be a full and complete "reconstruction" of the accident. Dilich explained:

> Q. Okay. You did not perform a reconstruction of the accident and what occurred in this case; true?
> A. Well, a reconstruction can be done completely depending on the amount of evidence you have, and some reconstructions cannot be done completely because of not sufficient evidence. So generally you can't just say reconstruction. *I.d. at* P. 38, L2-9, 22-24.

Dilich further explained:

> I did do a reconstruction of the damage area to the vehicle, but I did not do a full reconstruction in regards to the other issues that you have been asking me about. *I.d. at* P. 47, L5-9.

Plaintiff references pages 78-81 of Dilich's Deposition testimony when she incorrectly claims that his opinions are based on assumptions and he could not definitely state where the damage came from. It is interesting that Plaintiff cited to a range of pages but no line numbers. The reason is that Dilich did not say what Plaintiff claimed. At page 78, Plaintiff's counsel describes various marks and scratches on Defendant's vehicle. Referencing those marks, Dilich stated at page 79, lines 1-5:

> Well, the -- that you described as an arc that goes across the fuel cover was from the tire on this truck. Whether or not that tire made contact further up than that, I can't tell but certainly down lower.

Dilich pointed to certain marks on Defendant's vehicle as showing evidence of being hit by a tire. He did not have an opinion as to whether certain other marks were made by a truck tire.

Dilich in his Deposition also was asked whether his opinions were based on assumptions. Dilich provided the following testimony: *I.d.* at *P.75, L12 – 76.*

> Q. You're making that assumption that that truck had those lugs and caused that damage; true?
> A. It's not an assumption. It's a fact. There is nothing else that would cause that kind of damage.
> Q. You haven't seen this truck or the wheels or the lugs. So it's not a fact; it's an assumption, right?
> A. No. I've seen -- I can see the damage to the side of the Toyota, and that type of damage is caused by the lug nut, the lugs on a -- on a wheel that's spinning as the vehicles come together. That's what caused that kind of damage. I've seen that before many times.

Plaintiff claims in her Motion that Dilich stated that nothing in his C.V. covered his opinions in this case. That is not accurate. Dilich stated that nothing *specifically* covered it, but his work generally covered it. Apparently, he never wrote an article that discussed in detail lug nuts of a truck making contact with a car. However, he did rely upon his experience and training in accident reconstruction to reach his opinions. On the point in question, he was asked the following and responded as follows:

> Q. Strike that. What methodology did you use to arrive at your opinions in this case?
> A. I thought I explained that in my report. I inspected the -- or I examined the photographs of the damage to the car. We don't -- we didn't have the truck. I -- frankly, I knew right away what caused that damage

after I looked at it that I see on the rear left side of the truck, and that is a result of my experience of seeing similar types of damage in other accidents. So I used my background and experience in that kind of damage as part of the methodology in determining what caused that damage. And then I went ahead and did a more sophisticated analysis of the damage to demonstrate or illustrate the fact that the damage was caused by a large truck wheel as opposed to something else. And to do that, I examined an exemplar 2015 Toyota Camry to make some measurements regarding the relevant areas of interest in that damage, and I compared that with an illustrator soft -- illustrator diagram of a Camry to ensure and validate the size of the Camry in the illustration.

Plaintiff claimed in her Motion that Dilich could not identify the kind of truck – box or semi – involved. Again, that is simply not accurate. Based on Dilich's analysis, he found that the tire, rim and lugs that caused the damage were "consistent with a full, heavy truck-size tire and wheel." Dilich at P.56, L24-P.5, L3. He explained that the damage could also have been caused by a particularly large box truck based on his knowledge and experience:

> The size of the tire is, as I said before, it's consistent with the size of a wheel of a semi tractor. If it's not -- if it's not a tractor-trailer but a straight truck, it's a very large box-type truck that would not be a combination, but either one, it's a very large wheel and tire.

Dilich clearly, repeatedly, and unambiguously testified that the damage came from a large wheel on a truck. Whether that was on a semi or a large box truck is irrelevant to his opinion. His opinion was that it was a large truck which is consistent with Defendant's testing and what Plaintiff and witness Parker initially stated.

Plaintiff claimed that Dilich does not have an opinion as to the size of the wheel. Dilich testified to the opposite, stating "That's not true. I do have an opinion regarding the size." *I.d. at Dilich at P.57, L7-16.*

Dilich was asked repeatedly about the lug nuts, the number, and their size. Dilich's report stated the damage is consistent with the wheel lugs on the front right wheel of a truck traveling forward with the wheels spinning forward. He was asked if the damage could have been caused by rear lug nuts. Dilich explained why the damage could not have been caused by rear lug nuts:

> Q. Could the rear wheels or lugs of this truck on those rear wheels have made contact with this car?
> A. No.
> Q. And why not?
> A. The drive wheel lugs are not protruding out from the rim. They are recessed from the rim. *Dilich at P.73, L16-22.*

Finally, Plaintiff criticized use of a photograph as not being of the precise type of truck involved. Dilich never claimed it did. Instead, the photograph was merely used to illustrate protruding lugs from recessed rear lugs. *Dilich at P. 109, L 8-11*.

Dilich testified as to his opinions and to the basis of those opinions. Accident reconstruction is science. He testified that he used elements of it. He never speculated. He used approved methods.

Some of that data was limited. He did not have the actual car involved. However, "a district court may deem reliable the testimony of a witness whose expertise is based on practical experience rather than data." *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).

As his opinions were based on the science of reconstruction, they meet the criteria necessary to be allowed.

V. **QUALIFICATIONS**

In Plaintiff's Motion, she never seriously challenged the qualifications of

Dilich. She did nothing more than recite he no longer was a member of certain organizations. Plaintiff's argument as to qualifications is really nothing more than an argument that because he did not pay annual dues to certain organizations, he is no longer qualified. This might go towards cross-examination but certainly not bar him from testifying. Plaintiff provides nothing to support her claim that an expert must be a member of a certain organization.

In *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, the Northern District of Illinois ruled that:

> In assessing a proposed witness's qualifications, a court should consider the witness's full range of education, experience, and training. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 951 (N.D. Ill. 2009).

Dilich has been an accident reconstructionist for over 40 years. Dilich at P.16, L. 14-22. He was accredited by the Accident Commission for Traffic Accident Reconstruction ("ACTAR") for 20 years until just last year when he allowed the accreditation to lapse for not fulfilling continuing education requirements, due to Covid. *I.d. at P.16, L19-24.* He has a long list of publications in his field and served on peer-review committees. *Id*. at P.24, L9-16.

He has over 40 years of experience. He is still an expert even though he voluntarily left these organizations. There is no reason to bar his testimony.

        Respectfully Submitted,

_____
John W. Gilligan, Ltd.
Schwartz Gilligan, Ltd.
120 N. LaSalle St., 34th Fl
Chicago, IL 60602
(312) 419-1011